**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-20352-CR-BLOOM(s)**

**UNITED STATES OF AMERICA**

**vs.**

**JOHNNY MATTHEW BATTLE, JR.,**

**Defendant.**
_________________________________/

# GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTION TO PRE-SENTENCING INVESTIGATION REPORT

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this response to the Defendant's objections to the Pre-Sentencing Investigation Report ("PSI").

**Paragraph 3:** The PSI is correct.

**Paragraph 5:** The information in this paragraph is relevant to the stolen firearm enhancement under Section 2k2.1(b)(4)(A) of the sentencing guidelines. The deceased's girlfriend spoke with law enforcement and advised that the Defendant was not authorized to obtain the Micro Draco **(Exhibit 83F)** from police. The deceased did kill himself with a firearm other than the Micro Draco. It is immaterial that this information was not adduced at trial,

> "A sentencing judge, [] is not confined to the narrow issue of guilt. H[er] task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial."

*Williams v. People of State of N.Y.*, 337 U.S. 241, 247, 69 S. Ct. 1079, 1083, 93 L. Ed. 1337 (1949).

**Paragraph 6:** The Defendant was not permitted to deal in firearms without a license, and he was convicted of this conduct by a jury. All of those firearms that were recovered from the Defendant's car and home were properly included, indeed the Defendant had actually sold the Micro Draco (**Exhibit 83F)** to a customer that committed suicide and then stole it back. Merchants, such as the Defendant, have merchandise to sell. Proprietors of lawful licensed gun stores often carry guns in the course of their business so that they cannot be robbed of their merchandise when selling guns to their presumably law-abiding non-felon customers. When this Defendant sold guns to felons and criminals out of his car he also was armed, as observed by the ATF agents conducting surveillance during the controlled purchases, ostensibly for the same reasons. Gun dealers also repair customers' firearms, indeed the statutory definition of a firearms dealer includes this conduct. 18 U.S.C § 921(a)(11)(B) ("the term 'dealer' means … (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms,…). The firearm missing a part **(Exhibit 83H)** was one of the Glock pistols that had been filed down to accept a Glock Switch. Modifying a gun to accept a Glock Switch is at the core of this Defendant's illegal gun business. Gun dealers also have guns to test and evaluate. Accordingly, all the guns that were recovered from the Defendant should be attributable to him.

There was evidence (**Exhibit 108A**) introduced at trial that the Defendant was familiar with the prices of Glocks in the Bahamas when a customer tried to dicker over the Defendant's prices:

> Customer: … 2500 a lil high four 3 guns that's like wat pay in the Bahamas we tryna get flip to make money

Defendant: Then he wont' be getting no dam Glocsk and I know what they pay for each gun in Bahamas I got other homies that's do the same sh*t.

**Exhibit 108A** at 2/15/2021 at 11:55:57 P.M. The Defendant has provided United States Probation and the Defense with a chart identifying the more than 200 firearms attributable to the Defendant.

**Paragraph 7:** The "7.62 caliber" Matrix Aerospace "AK-47" referenced in Paragraph 7 of the PSI is actually a 5.56 caliber Matrix Aerospace AR-15 type firearm. This firearm was introduced at trial as **Exhibit 67** by one of the Broward Sheriff's deputies that recovered the firearm from the apartment.

**Paragraph 11:** The controlled call where Individual-1 called the Defendant to discuss the purchase of a Glock Switch or "kill switch" was introduced into evidence as **Exhibits 16 and 16T.**

**Paragraph 12:** The Definition of a "Glock Switch" in the PSI is correct.

**Paragraphs 14, 15 & 16:** The PSI is correct. Various employees of the gun store provided firearms to the Defendant which he immediately re-sold to an undercover detective. These transactions were conducted to avoid reporting/transfer requirements. The undercover detective told the Defendant that he could not complete paperwork inside the gunstore. Moreover, the detective paid the Defendant roughly double what the cost of those same firearms would have cost in a gun store.

**Paragraph 17:** The undercover detective introduced and described the text messages where the Defendant offered "a 300blackout fully" automatic firearm. **Exhibit 36** at 5/30/2022 at 12:12:03 A.M. The undercover detective also testified at trial about the Defendant offering him this fully automatic M-16 type firearm for sale.

**Paragraph 18:** The PSI is correct. The Defendant offered to install the Glock Switch for the undercover detective. The call was admitted as **Exhibit 30**.

**Paragraph 29:** The Defendant should be held accountable for over 200 firearms, since the investigation has revealed that the Defendant purchased or otherwise acquired that many firearms. The Defendant sold firearms from his car, and his home. The bills of sale recovered from his car and iCloud actually show that he had sold one of the firearms, the Micro Draco, found in his possession.

**Paragraph 30:** The trafficking enhancement is applicable for this Defendant's offense conduct. Application Note 13 of Section 2k2.1 defines the two elements of the trafficking enhancement: (1) the disposition of 2 or more firearms, and (2) knowledge that firearms would be provided to someone that could not possess it, or would use it unlawfully. The Defendant sold hundreds of firearms. Additionally, the United States introduced evidence that the Defendant sold guns to A.G. to do "body drops," and offered to trade guns for "dope." He also offered a shotgun to someone who said he was a felon, and sold firearms to numerous felons and criminals – because they would pay more for guns. Aside from prohibited persons and criminals, who could not possess or receive any firearms, the Defendant also sold unregistered "fully automatic" machine guns. Unregistered machine guns cannot be possessed by anyone. Thus both elements are satisfied, and the Defendant should receive the 4 level enhancement for "trafficking" under Section 2k2.1(b)(5).

**Paragraph 31:** The undercover detective told the Defendant that he was exporting firearms to Haiti, as an excuse for why he was buying so many. The Defendant thereafter sold him numerous firearms. The Defendant also talked to his customers about knowing the prices for guns in the Bahamas since he had "homies" doing it. Finally, numerous firearms purchased by the Defendant have been recovered by Bahamian authorities. Thus the 4-level enhancement for export applies.

Moreover, even if the criteria for 2k2.1(b)(6)(A) were not met, the Defendant would still receive the same 4 level enhancement under 2k2.1(b)(6)(B). The Defendant sold firearms to customers to do "body drops." **Exhibit 106A** at 9/12/21 at 1:45:52 A.M. Later the Defendant himself told A.G. that he was going to rob a "female" while her significant other was "in jail for hitting her," ostensibly because of drug deal gone wrong. **Exhibit 106A** at 12/05/2021 at 5:48:47 P.M. When the Defendant and A.G. still had not been paid 3 days later, the Defendant told A.G. he shot up or "blessed the house," and showed A.G that he had indeed gotten new bullets. **Exhibit 106A** at 12/08/2021 at 4:17:55 P.M. The Defendant also spoke with A.G. about drug deals (**Exhibit 106A** at 10/11/2021 at 12:53:39 and 12/08/2021 at 4:17:55 P.M.) and robberies (**Exhibit 106A** at 2/4/2022 at 6:11:45 P.M.). Defendant still sold him guns.

**Paragraph 35 and 38**: As explained in the Government's objections, the correct level should be 37.

**Paragraph 36, 38, and 41.** The Defendant does not satisfy the criteria for a 2 level reduction, under the amended guidelines because he possessed, received, purchased, transported, transferred and sold firearms in violation of Section 4C1.1(a)(7) ("the defendant did not possess, receive, purchase, transport, transfer, sell or otherwise dispose of ***a firearm*** or other dangerous weapon…).

**Paragraph 84:** The total offense level should be 37.

**Paragraph 85:** The PSI is correct. *See* § 5G1.2(d).

**Paragraph 94:** The Defendant's objections have not identified any specific factors that may warrant a departure or variance. Defendant's motion for downward variance (DE 108) is also missing such factors. Instead, the motion for downward variance compares this Defendant's guidelines to other persons convicted of offenses under the same guideline, Section 2K2.1, without

any regard for the offense conduct itself, i.e. the scale of the Defendant's criminal enterprise, and his knowing distribution of guns to illegal exporters, criminals and felons. The Defendant's references to his family, and his family ties are not relevant in determining whether a sentence should be reduced. *See* USSG § 5H1.6.

WHEREFORE, the United States respectfully requests that this Defendant's objections be denied and the Defendant be given a guideline sentence of 15 years.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: */s/ Hayden P. O'Byrne*
Hayden P. O'Byrne
Assistant United States Attorney
Florida Bar No. 60024
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9447
Fax: (305) 536-4699
Hayden.obyrne@usdoj.gov